IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA ) 
)
v. ) CASE NO. 2:25-cr-00494-BL-KFP
)
MATTHEW ALAN CLARK )
)

## ORDER

Defendant Matthew Alan Clark faces a four-count indictment for possession with intent to distribute methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, unlawful possession of body armor, and possession of a firearm by a convicted felon. (Doc. 1). He has filed a motion to suppress all evidence obtained from a search of his residence on August 8, 2024, and all evidence obtained based on his interview with law enforcement on August 13, 2024. (Doc. 21). The United States Magistrate Judge recommends that the court deny the Defendant's motion to suppress. (Doc. 39). The Defendant filed objections to the recommendation. (Doc. 43).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to

which objection is made."   28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P.

59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate

judge's recommendation.").   A district court's obligation to "make a de novo

*determination* of those portions of the report or specified proposed findings or

recommendations to which objection is made" requires a district judge to "give fresh

consideration to those issues to which specific objection has been made by a party."

*United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (italics in *Raddatz*) (internal

quotations and citations omitted).

The Defendant objects to the Magistrate Judge's factual finding that the

Defendant "'was armed with both an AR-15 rifle and a pistol, during his engagement

with the victim and his flight thereafter.'"  (Doc. 43) (quoting and citing Doc. 39 at

13).   The Defendant agrees that the "record shows that prior to law enforcement's

arrival at the scene, [he] had both an AR-15 and a handgun."   (Doc. 43 at 2).

However, the Defendant maintains that the record shows that he did not have the

AR-15 rifle when he ran into the woods after law enforcement arrived.  (Doc. 43 at

2).  The Defendant concedes that he was armed when he ran into the woods, but he

disputes "that he had an AR-15 rifle with him at any point after law enforcement

was on the scene."  (Doc. 43 at 2).

The Magistrate Judge correctly found, and the Defendant does not dispute,

that the Defendant "was armed with both an AR-15 rifle and a pistol[] during the

engagement with the victim." (Doc. 39 at 13). And in her recitation of the facts in the "Introduction" section of the Recommendation, to which the Defendant does not object, the Magistrate Judge did not find that the Defendant was carrying an AR-15 rifle when he entered the woods when law enforcement arrived. (*See* Doc. 39 at 1-3). In her factual findings in the "Introduction" section, the Magistrate Judge stated:

> Law enforcement responded to the scene. Upon arrival at around 2:50 p.m., an officer encountered the person he believed was the reported armed person (later determined to be Clark), and the officer saw him flee into a wooded area. Doc. 21 at 3 ¶ 3; Doc. 34 at 2. The officer opted to wait for backup before pursuing the suspect. Doc. 33-2 at 13:50:07. He called out on his speaker for the individual to "come out of the wood line," and the officer reported by radio that he saw what appeared to be a bulletproof vest on the individual who went into the wood line. *Id*. at 13:50:49–13:51:26.

(Doc. 39 at 2).

For good reason, the Magistrate Judge did not mention in her factual findings that the Defendant possessed the AR-15 rifle when he ran into the woods after law enforcement arrived. (Doc. 39 at 1-3). Defendant Deputy Pierce's dash cam video does not clearly show whether the Defendant was carrying an AR-15 rifle when he ran into the woods. (Doc. 33-2 at 2:41:34 to 2:51:43).[1] On his body cam video, Deputy Pierce radios to other officers on the scene that the suspect who ran into the

---

[1] In its brief on the motion to suppress, the Government asserts that the "first deputy to arrive on the scene observed Defendant holding a rifle," citing to "Gov't Ex 1, Dash Cam." (Doc. 34 at 2). After the court's review of that dash cam video, the court cannot find that the video clearly shows the Defendant was holding a rifle when he ran into the woods.

woods was wearing a bullet proof vest and shorts, but "that's all [he] saw really." (Doc. 33-2 at 13:51:29 to 13:51-32).[2]   Deputy Pierce did not mention that the Defendant had a rifle when he ran into the woods.

When Deputy Pierce and another officer encountered H.M. by the cell towers, body camera footage shows that H.M. reported that, after the Defendant had shot a gun in the air and pointed a weapon at her twice, she fled from the Defendant and saw him, about 25 minutes before law enforcement arrived, walking down the road wearing a bullet proof vest and carrying a pistol and an AR-15 rifle.  (Doc. 33-3 at 14:00:49 to 14:03:56).  H.M. stated that the Defendant was following her with "the gun" wearing a bullet proof vest and that she was hiding from him.  *Id*.  She stated that, after he ran into the woods when law enforcement arrived, the Defendant ran past her but did not see her because she was hiding.  *Id*.  It is not clear from H.M.'s statements to law enforcement whether the Defendant was carrying both an AR-15

---

[2] In his objections, the Defendant states that a "police report states that Deputy Pierce saw Mr. Clerk with a rifle."  (Doc. 43 at 2).  However, the court cannot locate that police report in the evidentiary record.  The affidavit for the warrant does not indicate that Deputy Pierce saw the Defendant with a rifle when he ran into the woods.  (Doc. 21-1 at 5) ("At approximately 1453 hours, Deputy's [sic] arrived in the area of the call. Deputies then informed dispatch that the male matching the caller's description, fled into the woods once noticing law enforcement.  Deputies attempted to call out for the male subject to exit out of the woods with no avail.  Deputies were then met by a passer by [sic] whom [sic] stated she was there to pick up her daughter.").

rifle and a pistol when he ran past her into the wooded area after law enforcement arrived.[3]

The Magistrate Judge's statement in the "Discussion" section of her Recommendation that the Defendant was armed with both weapons during "his flight thereafter" could refer to the period of time in which H.M. fled from the Defendant, the Defendant followed her, and H.M. saw the Defendant walking down the street with the AR-15 rifle and pistol, and not to the period of time after law enforcement arrived.  Moreover, the Magistrate Judge correctly stated that "[b]ased on H.M.'s report to the first responding officers," the Defendant "remained armed (with at least one firearm) as he evaded law enforcement."  (Doc. 39 at 13).  To the extent that the Magistrate Judge's reference to the "Defendant's flight thereafter" referred to when he was following H.M. after she fled from him and saw him with both weapons on the road, the court **OVERRULES** the Defendant's objection.[4]

---

[3] And the Magistrate Judge correctly stated in her factual findings that "H.M. explained to the officers that about 25 minutes before they found her, she had seen [the Defendant] run by while still armed and wearing the bulletproof vest."  (Doc. 39 at 3).

[4] The Magistrate Judge's analysis in the "Discussion" section of the Recommendation was based on the fact that law enforcement reasonably believed that the Defendant was armed wearing body armor when he ran into the woods to evade law enforcement, regardless of whether he was armed with one or two weapons when he took off running.  Even if the Defendant was not carrying an AR-15 rifle when he ran into the woods to evade law enforcement, there is no dispute that the Defendant was armed and wearing body armor.  Thus, the Magistrate Judge's analysis remains solid.

The Defendant also objects to the Magistrate Judge's legal conclusion that exigent circumstances justified the warrantless entry into the Defendant's residence. (Doc. 43 at 6). The Defendant argues that the Government cannot establish that there was such an urgent need to enter the residence without a warrant because if the Defendant "was inside the residence, it was surrounded, and he wasn't going anywhere. If he wasn't in the residence, then there was no reason to go in." (Doc. 43 at 7). The Defendant asserts no urgency existed because H.M. was safe at the time law enforcement entered the residence, (doc. 43 at 8), and because "*nothing happened*" for over an hour after law enforcement saw the Defendant run into the woods, (doc. 43 at 9-10) (emphasis in original). The Defendant's arguments lack merit.

As the Magistrate Judge correctly found and thoroughly explained, "the officers reasonably believed that law enforcement outside the home were in danger and that the dangerous suspect was inside the home armed and ready to engage in a gun fight." (Doc. 39 at 13). Moreover, as the Magistrate Judge explained, the information that law enforcement collected "in the final 25 minutes" before the search of the residence "supported exigent circumstances to search the home shortly after the final piece, Clark's cellphone, came to light." (Doc. 39 at 17). From the record, the court agrees with the Magistrate Judge that it was reasonable for the officers to believe that the Defendant had circled back to his residence and had his

cellphone with him connected to Wi-Fi inside the residence.  (Doc. 39 at 14-16). The court agrees with the Magistrate Judge's finding that the "officers on the scene had reason to believe that in order to protect the lives of law enforcement (or anyone else in the vicinity), they had to act with exigency to search the home for Clark when they had probable cause to believe he was inside." (Doc. 39 at 18).  Thus, for all the reasons explained by the Magistrate Judge in her Recommendation, the court **OVERRULES** the Defendant's objections on this issue.

The Defendant also objects to the Magistrate Judge's legal conclusion that the Defendant did not make a clear and unequivocal invocation of his right to counsel during his custodial interrogation.  (Doc. 43 at 11-13).  In essence, the Defendant "disagree[s]" with the Magistrate Judge's finding on this issue.   (Doc. 43 at 12) ("We disagree.").  The arguments that the Defendant makes in his objections on this issue are ones the Magistrate Judge considered and correctly rejected in her Recommendation.  (Compare Doc. 43 at 11-13 with Doc. 39 at 18-25).  Having found no legal error in the Magistrate Judge's finding on this issue, the court **OVERRULES** the Defendant's objections on this issue.

After careful review of the entire file, including all evidentiary exhibits, and upon consideration of the recommendation of the Magistrate Judge, the court **OVRRULES** the Defendant's objections, **ADOPTS** the recommendation of the

Magistrate Judge (doc. 39), and **DENIES** the Defendant's motion to suppress (doc. 21)**.**

The Court DIRECTS the Clerk of Court to term the gavels at documents 21 and 39.

**DONE** and **ORDERED** on this 2nd day of March, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE